UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

David R. Burns,

                Plaintiff,           08-CV-3763 (CPS)

   - against -

                                   MEMORANDUM OPINION
The Marley Company Pension Plan for    AND ORDER
Hourly Employees at Stockton, California,
The Administrative Committee of Marley
Company Pension Plan for Hourly Employees
at Stockton, California, SPX Corporation,
SPX Retirement and Welfare Plan
Administrative Committee, SPX Pension
Service, and JP Morgan Chase Bank, N.A.,
Benefits Payment Services,

                Defendants.

-----------------------------------------X

SIFTON, Senior Judge.

Plaintiff David R. Burns commenced this action on September 16, 2008, against the Marley Company Pension Plan for Hourly Employees at Stockton, California ("the Plan"), the Administrative Committee of the Marley Plan, the SPX Corporation ("SPX"), the SPX Retirement and Welfare Plan Administrative Committee ("SPX Administrative Committee"), the SPX Pension Service, and JP Morgan Chase Bank, N.A., Benefits Payment Services ("JP Morgan"). Plaintiff claims that defendants, in denying plaintiff's claim for disability retirement benefits, breached the duty of absolute loyalty they owed to plaintiff as his fiduciaries under § 404 of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1104. Plaintiff seeks

money damages, injunctive relief, and costs.  Presently before this Court is defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons set forth below, defendants' motion is granted. Plaintiff is granted leave to amend his complaint within 30 days of the date of this memorandum opinion.

## BACKGROUND

The following facts are drawn from the Complaint and the exhibits attached thereto, and are assumed to be true for the purposes of this motion.

Plaintiff is a resident of Nevada, and a participant in the defendant Plan.  Compl. ¶ 3.  On September 27, 1994, he was hired by the Marley Tooling Tower Company to work at its Stockton factory, where he continued to work until it closed in 2002.  *Id.* ¶¶ 3, 6.

The defendant Plan was created by the Marley Company, which was the parent corporation of the Marley Cooling Tower Company (collectively, "Marley"), plaintiff's employer from his date of hire in 1994 until 2001, when Marley was acquired by defendant SPX.  *Id.* ¶ 4.  The Plan's 1993 Summary Plan Description names the Marley Company as the Plan administrator.  *Id.*  The Marley Company chooses the Plan Administrative Committee, which is endowed with discretionary authority to construe the terms of the Plan and to determine eligibility for benefits, pursuant to

section 9.2 of the Plan. *Id.* ¶¶ 4-5; *see also id.* Ex. A (copy of 1993 Summary Plan Description) at 8.

Defendant JP Morgan is named as the Plan's trustee in the Summary Plan Description effective July 26, 2002. *Id.* ¶ 4. JP Morgan, as trustee, is the successor to Deutsche Bank, which on or about June 4, 1999, acquired the Bankers Trust Company, which had been named trustee in the Plan's 1993 Summary Plan Description. *Id.*

Defendant SPX is the successor to Marley. *Id.* ¶ 5. SPX is a publicly owned company whose shares are traded on the New York Stock Exchange, with its principal office in Charlotte, North Carolina. *Id.* According to the Plan's Summary Plan Description, effective July 26, 2002, defendant SPX Administrative Committee is the successor to defendant Marley Company Administrative Committee. *Id.*

Plaintiff worked continuously at the Stockton factory from September 27, 1994, to July 26, 2002. *Id.* ¶¶ 6-7. In late 2001 or early 2002, plaintiff was provided with a copy of a document on defendant SPX's letterhead captioned "UDI Master Pension Plan for Hourly Employees: Marley Cooling Tower Stockton Plant," and sub-captioned "Statement of Estimated Benefits as of December 31, 2001" (the "Pension Statement"). *Id.* ¶ 8. According to the Pension Statement, plaintiff was estimated to have 8.0833 years

of "credited service" and 7 years of "vesting service"[1] as of

December 31, 2001. *Id.; see also id.* Ex. B (copy of Pension

Statement). The Pension Statement further explains that "[t]he

data shown on this statement reflects information currently on

file and hours earned through December 31, 2001. **When you retire**

**or terminate employment, your benefit is calculated based on your**

**actual Years of Credited Service and may be higher or lower than**

**the amount shown.**" *Id.* Ex. B (emphasis in original).

At a May 17, 2002 meeting convened by his employer, and in a

letter dated July 26, 2002, plaintiff was informed that the

Stockton factory was being closed. Compl. ¶ 10. In the

following months, company representatives assured employees that

they would be permitted to transfer to another SPX-affiliated

facility. *Id.* ¶ 11. These assurances were made, in plaintiff's

presence: (1) during a meeting on the Stockton plant closure; (2)

during contract negotiations with union leaders; and (3) at a

dinner held at the conclusion of negotiations after the union

voted to accept the terms of the contract for plant closure. *Id.*

---

[1] The Pension Statement explains that "vesting service" years are used
to determine "vesting status":

> **Vesting Status** refers to your right to receive benefits from the Plan.
> If your Vesting Status is "Vested," you have already earned the right to
> receive benefits from the Plan. If your Vesting Status is "Not Vested,"
> you will become fully vested when you have earned a total of five years
> of Vesting Service. The Vesting Service, which you have earned as of
> December 31, 2001, is shown in this statement. You will earn one year
> of Vesting Service for each calendar year in which you work at least
> 1,000 hours.

Compl. Ex. B (emphasis in original).

During the meetings concerning the plant closure, company representatives told union members that terminating employees would be credited for Pension Plan purposes with actual service through the date of plant closure, plus and additional 18 months of service. *Id.* ¶ 12. In addition, plaintiff, in particular, was told that he would be credited with 7 months for service through July 27, 2002, as well as the aforementioned 18 months of service. *Id.* ¶ 13. Plaintiff was therefore led to believe that, in addition to the 8.0833 years of credit referred to in the Pension Statement, he had an additional 25 months of credit, and therefore a total in excess of 10 years of credit. *Id.* ¶ 14.

On June 12, 2002, while working at SPX's water treatment plant, plaintiff slipped and fell into a contaminated sludge pit. *Id.* ¶ 15. As a consequence of this accident, plaintiff injured his right wrist, arm and hand, and his knee (including his anterior cruciate ligament). *Id.* ¶ 16. Plaintiff received medical treatment for his injuries, but alleges that the injuries ultimately rendered him "permanently and totally disabled." *Id.*

According to the Plan's 1993 Summary Plan Description, participants in the Plan are eligible for a disability pension if they "become permanently and totally disabled,"[2] and have "at

---

[2] "Permanently and totally disabled" was defined to mean:

[A]s a result of bodily injury or disease, you are permanently, continuously and wholly prevented for life from engaging in any occupation and performing any work for compensation. You will also be considered disabled if you totally and irrevocably lose: sight of both

least 10 years of service at the time [they] become disabled."
Compl. ¶ 17; *see also id.* Ex. A (copy of 1993 Summary Plan
Description) at 5. "Years of Credited Service" is defined as
follows: "You earn a year of credited service for each calendar
year during which you complete 1,500 hours of service. Also, you
receive a partial year of credited service if you complete at
least 1,000 but less than 1,500 hours of service in a calendar
year." *Id.* Ex. A at 3. Plaintiff alleges that because he
believed he had sufficient credits for a disability retirement
pension, he declined to pursue the opportunity to transfer to
another SPX-affiliated facility. *Id.* ¶ 18. Instead, plaintiff
agreed to sever his employment and enter into a Separation
Agreement and General Release. *Id.* According to SPX records,
plaintiff's employment was terminated on July 26, 2002. *Id.*
¶ 19.

By letter dated August 10, 2005, plaintiff asked the Plan to
grant him a disability retirement benefit retroactive to January
13, 2004. *Id.* ¶ 20. On September 19, 2005, SPX sent plaintiff a
letter ("the Initial Denial Letter") informing him that his claim
had been rejected. *Id.* ¶ 21. The Initial Denial Letter stated
that plaintiff had 8.0833 years of credited service as of July
26, 2002. *Id.; see also id.* Ex. C (copy of Initial Denial

---

eyes, use of both hands, use of both feet, use of one hand and one foot.
Compl. Ex. A at 5.

Letter).  The letter made no reference to the additional months of credit plaintiff had been promised.  *Id.*

On November 1, 2005, plaintiff appealed the denial.  *Id.* ¶ 22.  By letter dated December 22, 2005 (the "Second Denial Letter"), the SPX Appeals Subcommittee ("the Subcommittee") informed plaintiff that the denial of his claim had been affirmed.  *Id.* ¶ 23.  Unlike the Initial Denial Letter, the Second Denial Letter confirmed that plaintiff was credited with 7 months of service during 2002 through the date of the plant closure on July 26, 2002, and an additional 18 months of post-termination service, as previously promised.  *Id.* ¶ 24; *see also id.* Ex. D (copy of Second Denial Letter).  However, in the Second Denial Letter, the Subcommittee informed plaintiff that he did not have 8.0833 years of credited service through the end of 2001, as was reflected in both the Pension Statement and the Initial Denial Letter; rather, plaintiff had 7 years of credited service as of December 31, 2001.  *Id.*  With the additional credit for 25 months, the Second Denial Letter found that plaintiff had earned nine years of credited service -- one year short of the ten years of credited service required for permanent disability benefits.  *Id.*

This action followed on September 16, 2008.

**DISCUSSION**

I.  <u>Standard for Motion for Judgment on the Pleadings</u>

In deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as that applicable to a motion to dismiss under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-moving party.  *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  Accordingly, courts must look at whether the complaint has pled "enough facts to state a claim to relief that is plausible on its face."  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must satisfy *Twombly*'s "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  If plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

II.  <u>ERISA Claims</u>

Plaintiff seeks to enforce his alleged right to disability benefit payments under the Plan, or in the alternative, an equitable remedy pursuant to ERISA.  Section 502(a)(1)(B) of

ERISA authorizes a suit by a plan participant to enforce rights under the terms of an employee benefits plan. 29 U.S.C. § 1132(a)(1)(B); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989). Section 502(a)(3) of ERISA authorizes a suit in equity for breach of fiduciary duty. 29 U.S.C. § 1132(a)(3); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008).

A. *Section 502(a)(1)(B) Claim for Benefit Payments*

    1. *Standard Governing 502(a)(1)(B) Claims*

A denial of benefits challenged under § 502(a)(1)(B) of ERISA is "to be reviewed under a de novo standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. Where the written plan documents confer such authority upon a plan administrator, a court confronted with a claim challenging the denial of benefits under ERISA should "not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995); *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir. 1999). In this case, the Plan vests the SPX Administrative Committee with responsibility for the construction, interpretation, and administration of the Plan, and discretionary authority to determine eligibility for benefits and

to construe the terms of the plan. The undersigned, as well as other courts in this Circuit, have held that this language is sufficient to trigger application of the arbitrary and capricious standard. *Burgie v. Euro Brokers, Inc*., 482 F. Supp. 2d 302, 312 (E.D.N.Y. 2007); *Greenberg v. Unum Life Ins. Co. of America,* No. CV-03-1396, 2006 WL 842395, at *6 (E.D.N.Y. 2006); *see also Snyder v. First Unum Life Ins. Co.,* 144 Fed. Appx. 134, 136 (2d Cir. 2005).

The arbitrary and capricious standard of review is narrow, and a court should not disturb an administrator's decision unless "it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52 F.3d at 442. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached." *Celardo v. GYN Auto. Dealers Health & Welfare Trust.*, 318 F.3d 142, 146 (2d Cir. 2003). Thus, the administrator's decision will be upheld so long as it "falls somewhere on a continuum of reasonableness -- even if on the low end." *Davis v. Commercial Bank of New York*, 275 F. Supp. 2d 418, 425 (S.D.N.Y. 2003). Review under this standard is based on the record before the administrator at the time of decision. *Risk v. Long Term Disability Plan of the Dun & Bradstreet Corp.*, 862 F.Supp. 783, 791 (E.D.N.Y. 1994).

2.  *Plaintiff's Claim to Disability Benefits*[3]

The description of the plan provided by plaintiff provides that participants in the Plan are eligible for a disability pension if they "become permanently and totally disabled," and have "at least 10 years of service at the time [they] become disabled."  Although plaintiff alleges that he was rendered permanently and totally disabled by the accident in June of 2002, he does not allege that he is entitled to credit for ten years of service -- and indeed, reiterates that he does not so allege in his brief.[4]  Pl.'s Mem. in Opp'n at 5.  Construing all facts and reasonable inferences in favor of plaintiff, plaintiff has failed to allege that he is entitled to benefits "under the terms of the

_____

[3] In his opposition papers, plaintiff states that "inasmuch as adequate relief is available under 29 U.S.C. § 1132(a)(3), Plaintiff withdraws his claims for relief under Section 1132(a)(1)(B)."  Pl.'s Mem. in Opp'n at 2 n.2.  Because plaintiff's withdrawal of his § 502(a)(1)(B) claim appears to be contingent, and because the law is clear that it must be dismissed, I consider its merits.

[4] Further, defendants assert, and plaintiff does not dispute, that the calculation of plaintiff's credited years of service in the Second Denial Letter was correct.  The 1993 Summary Plan Description provides that a year of service is credited for each calendar year in which an employee works at least 1,500 hours, and partial credit is given for a calendar year in which an employee works at least 1,000 hours but less than 1,500 hours.  Plaintiff worked a total of four months in 1994 from his September 27, 1994 date of hire to the end of the year, and thus did not receive any credit for that year.  For the years from 1995 to 2001, plaintiff worked in excess of 1,500 hours each year, yielding a total of seven credits.  In 2002, he worked for the seven months preceding his termination on July 26, 2002, for which he was given a partial credit of 0.5833.  Pursuant to the agreement by which employees at the Stockton factory were credited for their actual service through the date of the Stockton plant closure, plus an additional 18 months of service, plaintiff was credited with five additional months for 2002, resulting in a credit of 0.4167; 12 months for 2003, resulting in one credit, and 1 month for 2004, for which he was given no credit.  A tally of plaintiff's credited years of service yields a total of nine years, which is below the 10-year threshold required for permanent disability benefits.

plan," as Section 502(a)(1)(B) of ERISA requires. *See, e.g.*, *Stewart v. Nynex Corp.*, 78 F. Supp. 2d 172, 188 (S.D.N.Y. 1999) (noting that "[a]ny entitlement to relief under § 502(a)(1)(B) must be found only 'under the terms of the plan'"). Accordingly, plaintiff's § 502(a)(1)(B) claim is dismissed.

B.    *Section 502(a)(3) Claim for Breach of Fiduciary Duty*

Plaintiff's second claim alleges that defendants breached their fiduciary duty of absolute loyalty owed to plaintiff pursuant to ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1).[5] The claim is based upon defendants' estimate of plaintiff's years of credited service as relayed to plaintiff in the Pension Statement, which allegedly materially misrepresents plaintiff's actual years of credited service.[6]  Plaintiff seeks equitable

---

[5] Section 404(a)(1) provides, in relevant part, as follows:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries . . .

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).

[6] At oral argument, counsel for plaintiff argued that plaintiff's fiduciary duty claim is not based solely on the Benefits Statement, but rather on the entire pattern of defendants' behavior toward plaintiff.  In support of this argument, counsel referred to cases in which courts have ruled that employers have a duty to speak truthfully and comprehensively in response to

relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3),[7]

for the alleged breach of fiduciary duty.

"To establish a breach of fiduciary duty based on alleged

misrepresentations about coverage under an ERISA plan, Plaintiff

must show that (1) Defendants were acting in a fiduciary capacity

---

questions from employees concerning their ERISA benefits. *See, e.g. Becker v. Eastman Kodak*, 120 F.3d 5, 10 (2d Cir. 1997) (noting that "[c]ourts of appeals in other circuits have held that ERISA fiduciaries must provide complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits," and holding that defendant's response to plaintiff's benefits question was misleading and supported finding a breach of fiduciary duty); *Bixler v. Cent. Pa. Health & Welfare Fund*, 12 F.3d 1292, 1302 (3d Cir. 1993); *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 751 (D.C. Cir. 1990). Here, however, plaintiff has not alleged that he asked defendants for any information regarding his benefits, nor has he alleged that in response to any such query, defendants failed to provide a complete and accurate answer. The only alleged misrepresentation identified by plaintiff as actionable is the inaccurate estimate of plaintiff's years of credited service provided to plaintiff in the Pension Statement.

In addition, in a surreply filed following oral argument, plaintiff argues that "[d]efendants did more than give Plaintiff one inaccurate benefit statement; they elicited the waiver of his transfer rights despite their knowledge that this statement . . . had never been supplanted by a precise calculation of his benefits, and without making any effort to provide, prior to deciding whether to waive his transfer rights, a statement of credits, that by Defendants [sic] own standards could be relied upon." Pl.'s Surreply at 1-2. Plaintiff does not refer to any case law supporting his argument that defendants had a fiduciary duty to provide an accurate statement of benefits to him when they purportedly sought a waiver of his transfer rights. More importantly, in his complaint, plaintiff does not allege that defendants elicited the waiver of plaintiff's transfer rights; rather, he states that "[b]elieving that he had sufficient credits for a disability retirement pension, Plaintiff declined to pursue the opportunity to transfer to another SPX-affiliated facility. Instead he agreed to sever his employment and enter into a Separation Agreement and General Release." Compl. ¶ 18. Accordingly, the only material misstatement or omission properly alleged by plaintiff is the estimate in the Pension Statement.

[7] ERISA Section 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).

I note that Section 502(a)(3) authorizes an action in equity only. Fiduciary duty claims to recover damages for a denial of benefits are precluded by ERISA. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("[e]xtracontractual damages not available to an individual under ERISA for breach of fiduciary duty").

and that (2) they made a material misrepresentation or omission (3) on which Plaintiff relied to her detriment." *Bell v. Pfizer Inc.*, 499 F.Supp.2d 404, 410 (S.D.N.Y. 2007) (internal citations omitted). Detrimental reliance on a material misrepresentation must be reasonable and in good faith in order to result in liability. *See, e.g.*, *Estate of Dermady v. Eastman Kodak Co.*, 136 F.Supp.2d 181, 190 (W.D.N.Y. 2001). Assuming without deciding that defendants were acting in a fiduciary capacity when they sent the Benefits Statement to plaintiff,[8] I conclude that plaintiff's breach of fiduciary duty claim fails because plaintiffs' allegations do not support a finding that defendants engaged in a material misstatement or omission on which plaintiff relied to his detriment.

    1. *Material Misrepresentation*

An employer's conduct need not rise to the level of knowing misrepresentation in order to constitute a breach of its fiduciary duties under ERISA. Rather, "fiduciary duties can also be breached by . . . negligent material misrepresentations." *Bell*, 499 F.Supp.2d at 410-11 (S.D.N.Y. 2007) (citing *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997)). A misrepresentation is "material" if there is a substantial likelihood it "would mislead a reasonable employee in making an

---

[8] The parties discuss at length whether or not defendants were acting in a fiduciary capacity when they estimated plaintiffs' years of credited service and sent the Benefits Statement to plaintiff. In light of my conclusions below, I need not resolve this question.

adequately informed decision about if and when to retire." *Id*.
at 411 (citing *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 192 (2d Cir.
2001)).

Plaintiff argues that defendants' erroneous estimate of his
years of credited service in the Pension Statement constituted a
material misrepresentation. While defendants concede that the
estimate of 8.0833 years of credited service recorded in the
Statement was indeed erroneous, they argue that it did not
constitute a material misrepresentation because other language in
the Statement made clear that the estimate was only an estimate
subject to review and not to be relied upon. The one-page
Pension Statement refers to the calculations contained therein as
"estimates" six times. Further, while the Statement does provide
that the "data shown on this statement reflects information
currently on file," it also alerts the reader in bold lettering
that "[w]hen you retire or terminate employment, your benefit is
calculated based on your actual Years of Credited Service and may
be higher or lower than the amount shown."

In support of their argument, defendants cite *Perreca v.
Gluck*, in which the Second Circuit held that where a routine
statement of projected benefits contains prominent disclaimers
that the calculations therein are estimates subject to review,
the statement does not constitute a "promise" in the context of a
promissory estoppel ERISA claim. 295 F.3d 215, 225 (2d Cir.

2002) ("In light of the prominent disclaimer printed on the
statement that specifically cautioned Perreca that '[a]ctual
benefits are . . . subject to verification before any payments
are authorized,' . . . the statement of projected benefits
cannot, in the circumstances of this case, reasonably be
construed as a promise concerning the precise amount of benefits
accrued").  At least one district court in this Circuit has
applied *Perreca* in the context of case presenting an equitable
estoppel claim and a breach of fiduciary claim, both of which
require an element of material misrepresentation.  In *Hart v.
Equitable Life Assurance Society*, the district court held that in
light of *Perreca*, "benefits statements that . . . contain[]
explicit cautionary language" do not constitute a material
misrepresentation supporting either an equitable estoppel or a
breach of fiduciary duty claim.  No. 02 Civ.2364, 2002 WL
31682383, at *5-6 (S.D.N.Y. Nov. 26, 2002).

Plaintiff argues that *Perreca* is inapposite here because
plaintiff's claim is not based on a promissory estoppel theory.
In support of this argument, plaintiff cites *DePace v. Matsushita
Electric Corporation of America*, in which a court in this
district distinguished *Perreca* in the context of an equitable
estoppel claim.  No. 02-CV-4312, 2004 WL 1588312 (E.D.N.Y. July
16, 2004).  Noting that a promissory estoppel claim requires
"reasonable reliance based on a promise, or a misstatement of

future intent," whereas an equitable estoppel claim requires
"reasonable reliance on a misrepresentation," the court in *DePace*
distinguished *Perreca* and found that the estimated benefits
statement at issue in *DePace* qualified as a material
misrepresentation. *Id.* at *7-10. In so holding, however, it
expressly distinguished the circumstances of *DePace* from those of
*Perreca*. Unlike in *Perreca*, where the benefits statement was "an
annual statement, and there was no evidence that Mr. Perreca's
employer made the estimate in a conscious effort to induce
immediate reliance," the *DePace* statement was made in connection
with a voluntary resignation program and was "explicitly intended
to induce reliance." *Id.* at 9. The court further noted:

> In *Perreca*, there is no indication that Mr. Perreca was
> limited in his ability to seek a more precise estimate from
> his company before retiring, or making inquiries before
> relying upon it. [In *DePace*], the plaintiffs were faced
> with a narrow time window in which to make a decision.
> Moreover, because the [*DePace*] plan itself was vague, the
> only accessible information upon which they could rely was
> provided in the estimates.

*Id.* at 10. The *DePace* court concluded that under the
circumstances presented by that case, "the use of boilerplate
disclaimers should not preclude the application of equitable
estoppel to the misrepresentations of fact made by Matsushita to
its employees." *Id.*

The circumstances of this case are more akin to those of
*Perreca* than to those of *DePace*. Here, the Pension Statement
appears to have been a routine communication, and plaintiff has

not alleged that it was generated to induce reliance or for any other specific purpose. Nor has plaintiff alleged that any circumstances existed which precluded him from requesting or rendered it difficult for him to obtain a more precise estimate of his years of credited service before retiring. Finally, unlike in *DePace*, the Plan documents describing the method for calculating years of credited service here are not ambiguous; rather, they clearly state how and when an employee will be credited for a year of service. Under these circumstances, the estimate recorded in the Pension Statement does not constitute a material misrepresentation.

2. *Reasonable Detrimental Reliance*

Even if the Pension Statement estimate did constitute a material misrepresentation, plaintiff's allegations do not support a conclusion that he reasonably relied to his detriment on the estimate. According to plaintiff, the June 12, 2002 accident "ultimately rendered [him] permanently and totally disabled." Compl. ¶ 16. Plantiff's employment was terminated on July 26, 2002. For undisclosed reasons, plaintiff did not file his application for disability benefits until August 10, 2005. Now, plaintiff claims that he relied to his detriment on the estimate in the Pension Statement because he believed, in 2002, that he had sufficient credits for a disability retirement pension, and therefore "declin[ed] to pursue the opportunity to

transfer to another SPX-affiliated facility" following the
closure of the Stockton plant.  Compl. ¶ 18.

Other than arguing in his brief that "there is nothing in
the Complaint indicating that [plaintiff] would have been unable
to extend his employment for the short period needed to earn one
additional pension credit," Pl.'s Mem. in Opp'n at 14, plaintiff
does not explain how, if the June 12, 2002 accident ultimately
rendered him totally and permanently disabled, he could have
continued to work and to accrue the additional year of credited
service required under the Plan.[9]  Even viewed in the light most
favorable to plaintiff, the allegations in the complaint do not
support the inconsistent finding that plaintiff became
permanently and totally disabled as a result of an accident in
June 2002, and yet deliberately chose to cease work in reliance
on the Pension Statement.[10]  Accordingly, even if the Pension

---

[9] In further support of his argument that his alleged reliance was
detrimental, plaintiff suggests that had he known he only had nine years of
credited service, he might have been able to negotiate an agreement, "for
example, permitting [him] to take unpaid sick-time until he gained the one
additional credit."  Pl.'s Mem. in Opp'n at 14.  The argument that defendants
might have allowed plaintiff to take unpaid sick-time for a year is
speculative at best, and in any case, it is insufficient to support a finding
of detrimental reliance.  Absent an adequate pleading supporting a reasonable
inference that plaintiff could have continued to work following the accident
that ultimately rendered him permanently and totally disabled, plaintiff's
detrimental reliance argument fails.

[10] In addition, defendants argue that plaintiff's alleged reliance on
the Pension Statement was not reasonable.  Because plaintiff knew his 1994
date of hire, and because the method of calculation of years of credited
service was clearly disclosed in the 1993 Summary Plan Description, they argue
that plaintiff should have known that he only had seven years of credited
service as of the end of 2001, not 8.0833 years as estimated in the Benefits
Statement.  Defendants also point out that the Benefits Statement correctly
estimates plaintiff's years of "Vesting Service" at seven years, not 8.0833
years, arguing that plaintiff should have known that the discrepancy between

Statement estimate did constitute a material misrepresentation, judgment on the pleadings would still be granted in defendants' favor with regard to plaintiff's claim for breach of fiduciary duty.

C.   <u>Equitable Estoppel Claim</u>[11]

"To succeed on a claim of equitable estoppel, a plaintiff must show: (1) a material misrepresentation, (2) reasonable reliance thereon, and (3) damage resulting therefrom." *DePace*, 2004 WL 1588312, at *7 (E.D.N.Y. July 16, 2004) (citing *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993)).  In addition, principles of estoppel only apply in ERISA cases "under extraordinary circumstances." *Id.* (citing *Devlin v. Transp. Comms. Int'l Union*, 173 F.3d 94, 102 (2d Cir. 1999)).  In light of my conclusions above that the Pension Statement did not constitute a material misrepresentation, and that plaintiff's allegations do not support an inference that he reasonably relied to his detriment on the Pension Statement, plaintiff's equitable estoppel claim also fails.  Accordingly, defendants' motion for

---

the years of credited service and vesting service must have been the result of error.  In light of my conclusion that plaintiff's allegations do not support an inference that he relied to his detriment on the Pension Statement, however, I need not determine whether plaintiff's alleged reliance was reasonable.

[11] Although plaintiff's complaint does not state a claim for equitable estoppel, in his brief in opposition, plaintiff argues that the allegations pleaded in the complaint are sufficient to support a claim for equitable estoppel and proceeds to address the requirements for an action for equitable estoppel "to provide an alternative basis for relief."  Pl.'s Mem. in Opp'n at 10-17.

judgment on the pleadings is granted with regard to this claim.

## CONCLUSION

For the reasons set forth above, defendants' motion for judgment on the pleadings is granted, and plaintiff's claims are dismissed.  Plaintiff requests and is hereby granted leave to replead his claims in an amended complaint to be filed within 30 days of the date of this memorandum opinion.  In the absence of such a timely filed amended pleading, all of the claims for relief dismissed herein shall be deemed dismissed with prejudice. The Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, NY
          April 30, 2009


              By: /s/ Charles P. Sifton (electronically signed)
                  United States District Judge